UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Mark Mandeville

    v.                          Civil No. 05-cv-92-JD

Merrimack County Department
of Corrections, et al.


O R D E R

    Mark Mandeville brings claims under Title II of the
Americans with Disabilities Act ("ADA") and claims under the
Civil Rights Act, 42 U.S.C. § 1983, challenging the conditions of
his confinement at the Merrimack County Department of
Corrections.  Several individual defendants move to dismiss the
ADA claims against them.  Defendants Judy Figueroa and Glennice
Poisson move for summary judgment on the claims of
constitutionally inadequate medical care brought against them.
Mandeville objects to the motions.


I.  ADA Claims

    Mandeville alleged Title II ADA claims against defendants
Carole A. Anderson, Mark Jardullo, Keith Stalker, Brian Prentiss,
Dawn Twining, Carol French, Sarah Stuven, Joseph Saucier, Larry
Untiet, Steve Mayo, and Donald Andrade.  Those defendants move to
dismiss on the grounds that Title II addresses liability of

public entities not individuals.  Mandeville does not dispute the
defendants' interpretation of Title II.

Instead, Mandeville argues that he intended to sue those
defendants in their official capacities.  "A suit against a
public official in his official capacity is a suit against the
governmental entity itself." Surprenant v. Rivas, 424 F.3d 5, 19
(1st Cir. 2005).  The governmental entity involved is the
Merrimack County Department of Corrections, which is already a
defendant in the case.  Therefore, the Title II ADA claims
against individual defendants are dismissed, although the
allegations made against them are deemed to be part of the ADA
claim against the Department.


II.  Constitutionally Inadequate Medical Care

Inadequate medical care in a prison violates the Eighth
Amendment only if it involves "acts or omissions sufficiently
harmful to evidence deliberate indifference to serious medical
needs." Feeney v. Correctional Med. Servs., Inc., 464 F.3d 158,
161 (1st Cir. 2006) (internal quotation marks omitted).
Deliberate indifference may be shown by a denial of medical care
for the purpose of punishing an inmate or by a reckless denial of
care, which requires "actual knowledge of impending harm, easily
preventable." Id. at 162.  A pretrial detainee, whose rights are

2

protected under the Fourteenth Amendment, is entitled to at least as much protection as a convicted prisoner.  Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983).

Mandeville, who was a pretrial detainee at the Merrimack County Department of Corrections during 2002, had a painful arthritis condition that was diagnosed in May.  In March of 2002, he was prescribed medication, Ultram and Flexeril, for back pain and pain associated with an abscess on his hip.  He asserts that the prescribed medication did not adequately control his pain, and he asked for and was given Ibuprofen on several occasions.  After diagnosis, Oxycontin and Ibuprofen were prescribed for pain, along with other medications.

In support of his claims, Mandeville contends that he had severe pain during the evening of April 13 and that he did not receive his usual dose of Ultram on April 14.  Later in the day on April 14, Mandeville states that he asked Nurse Glennice Poisson for Ibuprofen, which she refused to give him.  He states that he had severe pain for the remainder of that day and the next day, April 15.  When he asked another nurse for Ibuprofen, on April 15, she also refused to give it to him, based on Poisson's order.

Mandeville contends that in October of 2002, Nurse Judy Figueroa did not give him his prescribed pain medication,

Oxycontin, because his prescription had been allowed to run out, and gave him Tylenol instead.  Mandeville states that he suffered severe pain and withdrawal symptoms as a result.  He also states that Figueroa was responsible for failing to reorder his prescription.

For purposes of the present motions, it will be presumed that Mandeville had a serious medical condition and that Poisson and Figueroa were aware of his condition and the pain associated with it.  In her motion for summary judgment, Poisson addresses her treatment of Mandeville on March 30, 2002, but not on April 14, 2002, which is the date of the events on which Mandeville's claims against Poisson are based.  The records Poisson provided do not show that Mandeville received any treatment on April 14. However, the absence of a record does not necessarily undermine Mandeville's assertion that Poisson refused to give him Ibuprofen on that date.  Therefore, Mandeville's affidavit, stating Poisson's actions on April 14 and 15, demonstrates a material factual dispute as to the treatment Poisson provided on those dates.

Mandeville states in his affidavit that on October 6, 2002, Figueroa was the nurse on duty for dispensing medications. Figueroa told him that he would have to go without his prescribed dose of Oxycontin because his prescription had run out and the

4

last nurse on duty had forgotten to reorder it.  Mandeville later realized that Figueroa was the nurse on duty who had forgotten to reorder his medication.  Mandeville asked her to give him an Oxycontin pill from another inmate's prescription but she refused, telling him that was against federal law.  Figueroa gave Mandeville Tylenol instead of Oxycontin.

Mandeville states that he could not sleep that night because of pain and anxiety.  The next morning the nurse on duty, Nurse Martin, gave Mandeville his medications, including Oxycontin.  He complained that Figueroa had not given him Oxycontin the night before, and Martin told him that Figueroa should have given him someone else's medication, which was done when necessary.

In her affidavit, Figueroa explains jail procedure in handling narcotic medications and her actions in dispensing medication to Mandeville.  She said that she first learned that Mandeville did not have enough medication when the nurse on the prior shift on October 6 told her that the medication had been ordered the week before but had not yet arrived.  Because October 6 was a Sunday, the pharmacy was closed.  Figueroa also states that in her experience patients can be transferred from Oxycontin to Tylenol without experiencing withdrawal symptoms and with good pain control.

5

Under the circumstances Mandeville describes in his affidavit, Figueroa forgot or neglected to reorder Mandeville's prescription pain medication that resulted in him missing a dose. She also refused to give him another inmate's medication, based on her understanding that to do so would violate federal law.

Crediting Mandeville's version of events, Figueroa, at most, may have been negligent or misinformed.  Mere negligence and misinformation do not show that Figueroa was deliberately indifferent to Mandeville's serious medical needs.  <u>Ruiz–Rosa v. Rullan</u>, 485 F.3d 150, 156 (1st Cir. 2007) ("[S]ubstandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation").  Therefore, Figueroa is entitled to summary judgment on Mandeville's claim against her.


<u>Conclusion</u>

For the foregoing reasons, the defendants' motions to dismiss the claims under the ADA brought against individual defendants (documents no. 61 and 62) are granted in part, and those claims are deemed to be claims against the Merrimack County Department of Corrections.  Defendant Glennice Poisson's motion

for summary judgment (document no. 57) is denied.  Defendant Judy

Figueroa's motion for summary judgment (document no. 67) is

granted.


          SO ORDERED.


                              _Joseph A. DiClerico, Jr._
                              Joseph A. DiClerico, Jr.
                              United States District Judge

August 22, 2007

cc:  W. Kirk Abbott, Jr., Esquire
     Charles P. Bauer, Esquire
     John A. Curran, Esquire
     Elizabeth L. Hurley, Esquire
     Lisa Lee, Esquire
     Michael J. Sheehan, Esquire
     Ralph Suozzo, Esquire

7